DIXIE DUBOISE, Appellant, *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.

No. 10666

December 10, 1980                                          619 P.2d 1223

*Dickerson, Miles & Pico,* Las Vegas, for Appellant.

*Rose, Edwards, Hunt & Pearson,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

On August 7, 1971, Dixie Duboise made a U-turn and crossed in front of a vehicle driven by Hobart Abney, causing a collision.[1] Hobart and his wife, Viola, were injured. Duboise was uninsured.

Pursuant to a settlement agreement, the Abneys' insurer, State Farm Mutual Automobile Insurance Company, paid them $22,000 in full satisfaction of all claims under the Abneys' policy. On April 2, 1973, the Abneys and State Farm executed a release and trust agreement which provides in part:

> For consideration aforesaid, and to the extent of any payment made thereunder, the undersigned agrees to hold in trust for the benefit of the Company all rights of recovery which he shall have against any person legally liable for such bodily injuries, and assigns to the Company the proceeds of any settlement with or judgment against such person. . . .

State Farm was also authorized "to take any action which may be necessary either in law or in equity in the name of the undersigned against any such person".

On August 6, 1973, State Farm filed a complaint against Duboise seeking to recover the $22,000 it had paid to the Abneys in settlement of their claim. The case was tried before the court without a jury. Duboise moved to dismiss the complaint on the ground that State Farm was not a real party in interest because it waived its subrogation rights when it executed the release and trust agreement. The district judge denied Duboise's motion to dismiss and entered judgment in favor of State Farm for $22,000.

Duboise argues that the release and trust agreement is similar to the loan receipt agreement considered in Central National Ins. Co. v. Dixon, 93 Nev. 86, 559 P.2d 1187 (1977) where this court defined the loan receipt as a written agreement between

---

[1] There is no transcript from the proceedings below. Pursuant to NRAP 10(c), the parties stipulated to a statement of the evidence.

an insurer and an insured under which a sum of money is paid to the insured by the insurer, as a loan, and is repayable to the insurer only to the extent of any recovery made by the insured from third parties. When the transaction is a true loan, rather than payment of a claim, there is no basis for subrogation and the insured is the real party in interest in an action against a third-party tortfeasor. *Id.* at 87–88, 559 P.2d at 1188.

Absent such an agreement, an insurer that pays its insured in full for claimed losses is subrogated by operation of law to the rights, if any, which the insured may have had against the tortfeasor before payment was made. Valley Power Co. v. Toiyabe Supply, 80 Nev. 458, 396 P.2d 137 (1964). What effect the release and trust agreement has on State Farm's subrogation rights is the key issue in this case. Generally, a loan receipt agreement constitutes a true loan if the obligation or liability of the insurer who advances the money is not absolute, but is contingent, conditional, excess or undetermined. Lusk v. State Farm Mut. Auto. Ins. Co., 569 P.2d 985 (Okla. 1977) (policy language providing for a trust agreement construed as creating a trust not a loan receipt transaction); Hiebert v. Millers' Mutual Insurance Ass'n of Ill., 510 P.2d 1203 (Kan. 1973).

The agreement in this case is not a loan receipt transaction. State Farm's liability to the Abneys under the uninsured motorist provision was absolute. The receipt and trust agreement acknowledges the Abneys' receipt of $22,000 "in full settlement and final discharge of all claims" under the policy.

The purpose of the agreement is to impose a trust upon any proceeds the Abneys might recover, up to $22,000. They were not required to sue, but neither was State Farm. State Farm was merely authorized to sue in the name of the Abneys if it chose to do so. Instead, State Farm pursued its subrogation rights by bringing this action in its own name. No error was committed by the district judge in concluding State Farm to be the real party in interest. The judgment of the district court is affirmed.

MOWBRAY, C. J. and THOMPSON and BATJER, JJ., and ZENOFF, Sr. J., concur.

---

The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in the place of THE HONORABLE E. M. GUNDERSON, who voluntarily disqualified himself in this case. Nev. Const. Art. 6, § 19; SCR 10.